# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>5404 N. Nevada Ave. #205, Colorado Springs,<br>Colorado, 80918, more fully described in Attachment<br>A, attached hereto, and to include all assigned<br>storage areas and associated vehicles. | Case No. 21-sw-477-SKC |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the ___State and___ District of ___Colorado___, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession and distribution of controlled substances and conspiracy to commit the same |

The application is based on these facts:

X   Continued on the attached affidavit, which is incorporated by reference.
☐   Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Andrew Cohen*
*Applicant's signature*

Andrew Cohen, Special Agent, FBI
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: 04/23/2021

*Judge's signature*

City and state: Denver, CO

Hon. S. Kato Crews, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A
## LOCATION TO BE SEARCHED:

**5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918**

The premises to be searched, 5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918 (the "Subject Premises") is described as an apartment located on the second floor of an apartment complex at 5404 N. Nevada Ave. in Colorado Springs, Colorado. The numbers "205" are present on the door beneath a wreath.



The premise to be searched includes the apartment and all rooms within the apartment, any attic accessible from inside the apartment, separate storage areas assigned to the particular apartment, floors, walls and combination safes, lockers and lock boxes, briefcases, containers, trash areas, and the persons of adults located at the premises at the time of execution of this search warrant. The Subject Premises also includes a 2012 Chevrolet Malibu bearing Colorado Temporary Permit 2951216, registered to Stephanie Barker at the Subject Premises, and any other vehicles executing officers are able to definitively associate with occupants of the Subject Premises at the time the search warrant is executed.

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEARCHED FOR AND SEIZED FROM:
### 5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918,
### as described in Attachment A (the "Subject Premises")

Agents and investigative officers are authorized to search for and seize the following particular items, that constitute: evidence of the commission of criminal offenses; contraband, the fruits of crimes, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as the means of committing criminal offenses, namely, violations of: 21 U.S.C. §§ 841(a)(1) and 846 (Possession with intent to distribute a controlled substance and conspiracy to commit the same) (collectively referred to herein as the "Subject Offenses").

1. Heroin, methamphetamine, fentanyl, and any other controlled substances as well as paraphernalia commonly associated with the use, packaging for sale or transportation of narcotics consisting in part of and including, but not limited to paper and plastic bindles, plastic bags and/or baggies, labels, scales and other weighing devices, measuring devices, pipes, and containers commonly associated with the storage and use of controlled substances.

2. Country Time Lemonade canisters.

3. Any documents related to or used to assist in the procurement or distribution of controlled substances, including notes, customer lists, supplier lists, correspondence, and ledgers.

4. Any document related to banking relationships, credit card and bank account information, investment accounts, real estate purchases, money transfers, financial statements, documentation of assets or liabilities and/or client lists.

5. Evidence of the identity of co-conspirators, suppliers of controlled substances, and purchasers of controlled substances, such as telephone and address books, telephone bills or toll records, diaries, ledgers, journals, papers, caller identification devices, digital cameras, telephone records, and electronic rolodexes.

6. Cellular telephones, laptop and desktop computers, tablet devices and other digital storages devices (include password information) such as external hard drives, thumb drives, and SD cards. Digital Devices will be seized but not searched absent consent of the owner or further legal process.

7. Home security system DVR/hard drives which could contain images of co-conspirators involved in illegal drug trafficking or money laundering.

8. Cash, currency, jewelry, financial instruments, and/or records relating to the laundering, secreting, and/or distribution of monies related to the proceeds of procuring or distributing of controlled substances, and any and all financial documents and records which may be evidence of financial transactions relating to obtaining, transferring, laundering, secreting, or spending the proceeds of the sale of controlled substances.

9. Photographs showing controlled substances or firearms and people in possession of controlled substances or firearms.

10. Any safe deposit box keys, storage keys, or records pertaining to safe deposit boxes or storage units or areas where controlled substances may be located. Agents are further authorized to open and search all luggage, safes, containers and lock boxes which are present on the Subject Premises for items as outlined within this attachment

11. Indicia of ownership and control including vehicle rental and/or title information, registration information, payment books etc. demonstrating rental and/or ownership of the premises described herein, including, by not limited to canceled envelopes, receipts, rental, purchase and/or lease agreements and keys.

12. Cash counting devices.

13. Weapons, Firearms, ammunition, and related accessories as well as other detructive devices which may be used to provide protection of the narcotics trafficking operation, its members and/or assets.

14. Investigators are authorized to document the areas to be searched with photographs and video recordings.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In the Matter of the Search of a Premises Located At:<br><br>5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918 | **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Cohen, being first duly sworn, hereby depose and state as follows:

### PURPOSE OF APPLICATION:

1.      Your Affiant and other law enforcement officers are involved in an investigation of potential violations of federal law, including: 21 U.S.C. §§ 841(a) and 846 (Possession with Intent to Distribute a Controlled Substance and Conspiracy to Commit the Same) (collectively referred to herein as the "Subject Offenses").

2.      This affidavit is submitted for the limited purpose of securing a federal warrant authorizing the search of the following residential location: 5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918 (the "Subject Premises"), which is further described in Attachment A, affixed hereto and incorporated herein by reference.

3.      Based on the information set forth below, your affiant has probable cause to believe that within and/or on the premises to be searched, as described in Attachment A, there is proof that constitutes evidence of the commission of the Subject Offense(s); contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as the means of committing criminal offense(s).  The evidence to be searched for and seized is set forth in Attachment B, which is also attached hereto and incorporated herein by reference.

4.      Furthermore, the issuance of this warrant could reasonably lead to the identification of additional individuals who are engaged in the commission of these offenses, the location of assets, and vehicles and instrumentalities used to commit these offenses.

### AGENT BACKGROUND AND EXPERIENCE:

5.      I am a Special Agent with the FBI, and have been since 2014. I am currently assigned to the Denver Division of the FBI, and specifically to the Southern Colorado Safe Streets Task Force. I investigate money laundering and drug trafficking in the normal course of my duties, and I am fully familiar with the facts of the case. During the course of my career, I have been an affiant on everal Title III wiretap affidavits related to narcotics, and I have participated in several narcotics investigations involving controlled substances, including, but not

limited to, heroin, cocaine, marijuana, and methamphetamine. I also have investigated individuals in other cases involving controlled substances and the possession of firearms by prohibited persons.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. In sum and as set forth below, my investigation to date reveals probable cause to believe that Stephanie Barker, and others yet unknown are illegally in possession of, and distributing, illegal drugs. I submit probable cause exists to believe evidence, fruits, and instrumentalities of those crimes committed by Barker and others will be found at 5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918.

8. Based on my training and experience and the facts set forth in this affidavit, I submit there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841 (possession with intent to distribute and distribution of a controlled substances) and 846 (conspiracy to distribute controlled substances) will be found at 5404 N. Nevada Ave. #205, Colorado Springs, Colorado, 80918 (hereinafter "the Subject Premises").

9. This property is more fully described in and shown in a photograph in Attachment A. I respectfully request the issuance of a warrant to search the property described in Attachment A for evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841 (possession with intent to distribute and distribution of a controlled substances) and 846 (conspiracy to distribute a controlled substance), identified with particularity in Attachment B.

10. The information contained within the affidavit is based on my training and experience, and is known to me personally or has been imparted to me by other law enforcement officers involved in this investigation.

### *Modus Operandi of Drug Trafficking Organizations*

11. I have experience, training, and communication with other law enforcement personnel who specialize in the areas of illegal drug trafficking and the laundering, detection and documentation of proceeds from drug trafficking. I also have experience in debriefing defendants and informants as witnesses who have personal knowledge of drug trafficking organizations and money laundering organizations.  Such individuals often have personal knowledge regarding the methods, transportation, and distribution of the drugs and money in large scale controlled substance distribution operations.

12. I know, based on training and experience, as well as from information relayed to me during the course of my official duties:

   a. That a significant percentage of heroin, methamphetamine, and fentanyl imported into the United States, currently enters the United States domestic market at

various points along the Southwest border of the United States, and is then transported to various cities throughout the United States for retail distribution. Furthermore, I know that the importation, transportation, and distribution of heroin, methamphetamine, and fentanyl are controlled by a number of well-organized and sophisticated drug trafficking organizations. I also know that drug trafficking organizations use couriers to transport drugs by vehicle from Mexico to various distribution centers in the United States; they use couriers to transport cash proceeds of drug sales from points of distribution in the United States back to Mexico, where the proceeds are laundered; and they use "stash houses," premises in which they warehouse large quantities of narcotics prior to their distribution.

      b.     That members of these organizations routinely utilize communication facilities including cellular telephones calls, electronic text messaging, and messaging applications accessible on cellular telephones, to communicate with other organization members in furtherance of their illegal goals.  During the course of these electronic communications, organization members commonly use coded language and references and/or encryption in an effort to elude law enforcement detection. Based on training and experience, I know that narcotics traffickers commonly use multiple, prepaid, or "throw away" cellular telephones to avoid detection and elude law enforcement, and said traffickers also change cellular phones frequently or use multiple cellular phones to avoid detection by law enforcement officials.

      c.     That drug dealers use cellular phones and other communication devices, in which they maintain names, addresses, and/or telephone numbers of their associates in the narcotics trafficking organization and customers of narcotics.

      d.     That drug trafficking organizations store information pertaining to drug trafficking activities on electronic devices, including cell phones, computers, and removable storage media. I further know, based on my training and experience, as well as from information relayed to me during the course of my official duties, that drug trafficking organizations often retain, for long periods of time, such electronic documents and devices, in order to maintain a record of contacts, accounts, income, expenditures, assets, and drug-related debts.

      e.     That narcotics traffickers routinely "rotate" electronic devices, including cell phones, in order to avoid detection by law enforcement. For example, a narcotics trafficker may possess multiple cell phones and alternate the use of the cell phones on a weekly or monthly basis, before rotating to another cell phone. Based on training and experience, I know that narcotics traffickers often retain possession of previously-used cell phones, even though such phones are no longer utilized in furtherance of narcotics trafficking.  Based on training and experience, I know that, while such phones may no longer be used for narcotics trafficking activities, the devices often contain electronic data, including call records, contact information, text messages, email, photos, video, and more, which can be evidence of past criminal activity.

      f.     That when drug traffickers amass quantities of cash from the sale of drugs, the drug traffickers often attempt to legitimize these profits through the use of banks and

financial institutions and their attendant services that include accounts, cashier's checks, money orders, wire transfers, and the like.  Based on training and experience, I know that evidence of such financial instruments, accounts, and other methods of "laundering" drug proceeds may be stored on digital devices, such as cell phones and computers.  I further know that narcotics traffickers often store electronic copies of records and receipts to such financial transactions on digital devices, such as cell phones.  My colleagues and I have seen, for instance, photographs of money orders, tracking numbers, and cash. Such records may also be stored as physical paper documents.

       g.       That it is common practice for large scale narcotics traffickers to travel to their purchase and distribution areas to facilitate their trafficking; that after purchasing drugs, narcotics traffickers will transport or cause to be transported narcotics to areas in which they will distribute the drugs; and that methods of transportation include commercial airlines, private airplanes, trains, buses, and rental and private automobiles. I further know that narcotics traffickers often store electronic copies of records and receipts to such travel on digital devices such as cell phones.  Similarly, geolocation information stored on devices also may reveal travel and patterns of travel material to the acquisition and distribution of controlled substances. Such records may also be maintained on paper, for example in the form of receipts for gas, meals or lodging.

       h.       That drug traffickers take or cause to be taken photographs or videos of themselves, their associates, their property, and their product. These traffickers often maintain these electronic images stored on digital devices such as cell phones.  One purpose for doing so appears to be to show and confirm they are in possession of the product they seek to distribute.

       i.       That drug trafficking organizations maintain a variety of documents related to drug trafficking, including ledgers, hotel receipts, wire transfer paperwork, apartment rental agreements, cell phone bills, passports, photographs, credit card bills, vehicle registration documents, vehicle rental receipts, utility bills, and other documents that provide evidence of the illegal conduct of such organizations. I further know that narcotics traffickers often store digital versions of such documents in electronic devices such as cell phones and on computer media.

       j.       There are many reasons why drug traffickers maintain digital and physical evidence for long periods of time. The evidence may be innocuous at first glance (e.g., copies of financial, credit card, and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, videos and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, records relating to safe deposit boxes, and computer hardware and software), but have significance and relevance when considered in light of other evidence. The drug trafficker may no longer realize he/she still possesses the evidence on a digital device or may believe law enforcement could not obtain a search warrant to search the device and seize the evidence. The drug trafficker may also be under the mistaken belief that he/she has deleted, hidden, or further destroyed any evidence stored on a digital device. However,

that evidence may still be retrievable by a trained forensic computer expert. Such evidence may be maintained either in a trafficker's residence or vehicle(s).

   k. That drug traffickers are increasingly using computer hardware and software to communicate with co-conspirators and to facilitate the financial transactions associated with both the narcotics deals themselves and with the laundering of the related proceeds. Computer hardware and software may contain spreadsheets of suppliers and buyers, financial records, bank account records, criminal contacts and other information relevant to the investigation of the criminal enterprise.

   l. I am aware that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41, Fed.R.Crim.P., permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are (1) instrumentalities, fruits, or evidence of crime; or (2) storage devices for information about crime.

   m. I am further aware that, when subjects engage in the mailing of controlled substances or the proceeds thereof, they may maintain materials such as receipts, tracking numbers, postal service mailing materials and various packaging materials designed to contain, safeguard and/or conceal the contraband or currency to be mailed. They may also maintain packages from mailings sent to their locations. Items such as tracking numbers and return / sender addresses on these materials can link traffickers to mailings and contraband that is seized in other investigations throughout the United States and beyond.

   13. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter. However, facts not set forth herein are not being relied upon in reaching the conclusion that probable cause exists for the issuance of the search warrant as requested herein.

## INVESTIGATION

### *Background of those involved*

   14. The United States, including the FBI, is conducting a criminal investigation of Stephanie Barker regarding possible violations of the Subject Offenses.

   15. Stephanie Barker, date of birth 05/03/1984, is suspected to be involved in the large scale distribution of methamphetamine, heroin, and fentanyl in Colorado Springs, Colorado, and surrounding areas. Barker communicates via Facebook messenger to arrange the meeting times, dates, and quantity of illegal drugs.

16.     I have reviewed a prior criminal history for Barker and learned she has the following felony convictions. In 2017CR1378, in El Paso County, she pled guilty to Escape, a Class 5 Felony, and was sentenced to two years DOC. In 2015CR28, in Bent County, she pled guilty to possession of a controlled substance, a Drug Felony Class 4. In 2014CR59, in Prowers County, she pled guilty to possession of a controlled substance, a Drug Felony Class 4 and was sentenced to two years probation.

17.     Barker's criminal history is provided for background information to the court. Barker's prior felony convictions related to illegal drugs are not intended to be used as the sole basis of probable cause for the requested warrant.

### *A Confidential Source of Information is reliable and credible*

18.     In the Spring of 2021, the CSPD and FBI received information from a confidential source of information (SOI1) with substantial knowledge of the distribution of illegal narcotics, particularly methamphetamine, heroin, and fentanyl. SOI1 has been arrested several times in the past, and has a criminal history that includes convictions for narcotics related offenses, and theft.

19.     SOI1's name is omitted from this affidavit in order to protect his/her identity. SOI1 fears physical retaliation by Barker and Barker's co-conspirators for providing information to law enforcement.

20.     SOI1 was recently contacted by law enforcement while in possession of illegal drugs, and provided information to investigators with hopes of leniency of pending criminal charges. SOI1 was not provided any monetary compensation in exchange for the information he/she provided.

21.     Your Affiant submits that SOI1 is familiar with many different types of illegal drugs, the tradecraft of large volume drug dealers, the street prices of illegal drugs, the identification of illegal drugs, and the types of equipment used in furtherance of illegal drug sales.

22.     SOI1 has also sold drugs in the past. As such, SOI1 is also familiar with the methods of packaging drugs, the process of weighing drugs prior to sale, and some of the tradecraft drug dealers employ to avoid detection by law enforcement.

23.     SOI1 has provided information related to the Subject Premises and Barker that was independently corroborated by law enforcement. Some, but not all, of the information is included.

24.     SOI1 was familiar with residential addresses associated with illegal narcotics other than the Subject Premises, street names (monikers) of other gang members involved in drug distribution, and details of how narcotics are sourced by distributors other than Barker.

25.     SOI1 has positively identified other drug dealers previously known to the CSPD and the FBI, and relevant in other drug investigations. For instance, he/she has identified phone

numbers as belonging to other drug sources of supply and those individuals link to open drug investigations. Your Affiant has left the names of those drug dealers out of this affidavit in order to protect the integrity of ongoing investigations. SOI1's information accurately compared to other confidential source reporting, and historical information known to the CSPD and FBI.

26.     SOI1 appears to have provided reliable information, and Your Affiant is not aware of any false information SOI1 has provided. Additionally, Your Affiant is not aware of any vendetta or grudge that SOI1 holds against those named in this affidavit.

27.     Based on the information provided in this section about SOI1, Your Affiant believes the information provided by SOI1 is reliable, and that independent Police work and independently obtained information corroborates SOI1's information.

### *SOI1 states there are drugs at the Subject Premises*

28.     SOI1 stated that Barker sells a large quantity of methamphetamine, heroin, and fentanyl from the Subject Premises.  Barker has been selling illegal narcotics from the Subject Premises for several months. SOI1 was shown a prior booking photo without any identifying information of Barker and positively identified her.

29.     SOI1 has been inside of the Subject Premises on multiple occasions during the Spring of 2021[1], and maintains a social relationship with Barker. SOI1 believed that Barker has been living at the Subject Premises for approximately six months. Additionally, SOI1 reported Barker keeps some type of wreath on the door of the Subject Premises that corresponds to the season of the year.

30.     SOI1 was familiar with Barker's phone number, Barker's social media accounts, the types of vehicles driven by Barker, and the employment status of Barker. SOI1 was able to direct investigators to Barker's Facebook page. SOI1 reported Barker owns a champagne colored Lincoln LS, a gold Chevrolet Tahoe with large chrome wheels, and a peach colored Mercedes Benz. SOI1 stated these vehicles are typically parked near the Subject Premises, and believed that Barker may store illegal drugs inside these vehicles. SOI1 stated that Barker is currently driving a newer model Chevrolet sedan.

31.     Since SOI1 was familiar with these types of innocent facts, and the information provided to be accurate, it is reasonable to believe that SOI1 would also have accurate information related to illegal activities.

32.     SOI1 has purchased illegal narcotics from the Subject Premises multiple times during March and April of 2021. During these transactions, SOI1 would exchange U.S. currency for methamphetamine.

33.     SOI1 stated that he/she is not the only person who buys drugs from Barker. Indeed, multiple people come to the Subject Premises to obtain illegal drugs. Other individuals

---

[1] Specifically, SOI1 was inside the Subject Premises multiple times between April 1, 2021 and April 23, 2021.

have purchased methamphetamine from Barker at the Subject Premises as recent as mid-April of 2021. Additionally, SOI1 stated Barker sells a pound of methamphetamine for approximately $3,200-$3,500. I know from my training, experience, and other active drug investigations that this price is the fair market value for a pound of methamphetamine.

34. Barker has multiple safes within her residence, including in her bedroom. During illegal narcotics transactions, SOI1 states that Barker would go back into the area of her bedroom, and SOI1 could hear the beeping tones of a safe combination being pushed. Barker would then return with illegal drugs, including heroin, methamphetamine, or fentanyl. SOI1 believes that Barker keeps illegal drugs and/or U.S. currency within these safes.

35. Barker also keeps illegal drugs inside of yellow Country Time Lemonade canisters, and within the dirt of plants inside the Subject Premises. SOI1 has seen Barker remove illegal drugs from these areas in the past.

36. SOI1 has also seen a significant amount of U.S. currency, estimated to be thousands of dollars, at the Subject Premises. During approximately mid-April of 2021, SOI1 saw U.S. currency at the Subject Premises and a significant quantity of suspected fentanyl.

37. Barker also has a digital scale and sandwich plastic baggies. Barker specifically uses sandwich baggies that do not zip closed, but that are normally folded shut. I submit this type of detail is important, and speaks to the overall reliability of SOI1's information. Although the presence of a scale and plastic baggies independently is innocuous, I know from my training and experience that, when these items are found together, it is likely for the purposes of weighing and distributing narcotics.

38. During the middle of April of 2021, SOI1 saw a large quantity of blue pills, suspected to be fentanyl and disguised as 30mg oxycodone pills within the Subject Premises.

*Physical surveillance at the Subject Premises*

39. On April 21, 2021, Task Force Officer (TFO) E. Gulbrandson conducted limited physical surveillance at the Subject Premises. TFO Gulbrandson located a wreath hanging on the outside of the door to the Subject Premises, as described by SOI1.

40. TFO Gulbrandson did not observe the vehicles believed to be associated with Barker and the Subject Premises on April 21, 2021, and observed the area for approximately one hour.

41. On April 22, 2021, TFO E. Gulbrandson and other law enforcement officers conducted additional surveillance at the Subject Premises. He observed a female that he recognized as Barker based on prior booking photographs and driver's license information[2] exit the building of 5404 N. Nevada Ave., Colorado Springs, Colorado.

---

[2] Barker's Colorado driver's license 98-104-0828 is revoked for Habitual Traffic Offense, and lists the Subject Premises as her residence.

8

42. Barker entered a 2012 Chevrolet Malibu bearing Colorado Temporary Permit 2951216, registered to Stephanie Barker at the Subject Premises. Investigators attempted to continue surveillance of Barker, but she drove in such a manner that investigators were unable to follow her. CSPD Detective A. Morgan believed Barker was conducting a surveillance detection route, common among drug dealers to ensure they are not being followed.

43. The door to the Subject Premises is located inside a hallway on the second floor. During the physical surveillance, investigators were unable to see that entry door, and were unable to determine if there was any traffic in or out of the residence. Investigators did not observe any vehicles that parked near the Subject Premises that they suspected purchased drugs from Barker.

### *CSPD Call for Service 21-136690*

44. On April 1, 2021, the CSPD received a call from Sal Marquez, believed to be the father of one of Barker's children. Marquez expressed concerns that Stephanie Barker is an active gang member and was concerned that she was involved in drug distribution from the Subject Premises. Marquez was also concerned for the welfare of children residing there, and believed that Barker had a gun.

45. The CSPD attempted to make contact at the Subject Premises, but was unable to contact anyone.

46. It is possible that Marquez called the CSPD with motivations of revenge against Barker. Marquez's information is not meant to be the sole determinant factor of probable cause in the requested warrant, but I submit that Marquez would reasonably be privy to the illegal activity of Barker, and his information tends to corroborate SOI1's information. I know that Marquez is not SOI1.

### *Colorado Springs Utility Information*

47. On April 21, 2021, investigators obtained information from Colorado Springs Utilities related to the Subject Premises. Investigators learned that Stephanie Barker is the sole utility account holder, and has been since 10/21/2020. SOI1 stated that Barker had been at the Subject Premises for approximately six months. These utility records tend to corroborate that information.

### *State of Colorado Wage Information*

48. In quarter two of 2020, Barker had reported wages of $2,216. In quarter one of 2020, Barker had reported wages of $1,365, both from SRI Operating Company. Barker had no wages after quarter two of 2020.

49. I know there are instances when individuals have legitimate income that are not reported to the State of Colorado. For example, if someone is self-employed or a Form 1099 employee, those wages may not be reported to the State.

50.     Barker has no reported earnings in over a year, however, appears to be able to maintain residency at the Subject Premises and the ability to maintain multiple vehicles. Based on open source market research, I estimated the rent at the Subject Premises to be between $1,200 and $1,400/month. There are no other adults listed on utility records, and the SOI1 said Barker is the only adult that lives at the Subject Premises.

51.     In combination with the other facts in this affidavit, it is reasonable to Barker uses the proceeds from illegal narcotic distribution to fund her lifestyle.

### *Information obtained from Pueblo Police Department*

52.     I learned that Sal Marquez lives in Pueblo, Colorado, and that Barker has history with the Pueblo Police Department (PPD). I contacted PPD Detective and FBI TFO J. Mathews, who informed me that Barker has an alert in the PPD computer system for narcotics, and as a known felon. These alerts are designed to allow PPD Officers to have situational awareness when they are in contact with individuals on the street.

### CONCLUSION

53.     SOI1's information is considered to be reliable, specific, and has been independently corroborated by law enforcement. SOI1 provided information in hopes of leniency of pending criminal charges, but SOI1 does not have a grudge or vendetta against Barker.

54.     Barker does indeed reside at the Subject Premises. Utility listings are in her name, her Colorado driver's license lists that address, one of her known vehicles registers there, and investigators saw her exit the building of the Subject Premises on April 22, 2021.

55.     Barker has a prior criminal history of narcotics, is known to the PPD as being associated with narcotics, and has no current wages on file with the State of Colorado. It is reasonably suspected Barker supports her lifestyle using the proceeds of illegal drug distribution.

56.     SO1 has recently seen illegal activity in the Subject Premises, specifically as recent as between April 11, 2021 and April 23, of 2021. Additionally, according to SOI1, this type of illegal activity has consistently occurred over the last approximately six months.

57.     SOI1 has been inside of, and seen illegal drugs inside the Subject Premises as recent as mid-April of 2021. SOI1 has purchased illegal drugs from inside the Subject Premises multiple times over the last several months and was familiar with intimate details about Barker's drug distribution operation. SOI1's intimate knowledge of details of the Subject Premises lend additional credibility to his/her information.

58.     Based on the facts set forth above, I submit probable cause exists to believe evidence, fruits and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute and distribution of a controlled substance) and 846 (conspiracy to distribute a controlled substance) exist within the Subject Premises described more fully in Attachment A. Therefore, I request permission to search the property identified in Attachment A for the evidence, fruits, and instrumentalities identified with particularity in Attachment B.

59. If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of government attorneys and agents is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will review all seized communications and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter team believes that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team.   If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.

Respectfully submitted,

*s/Andrew Cohen*
Andrew Cohen
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on April __23__, 2021

_____
HON. S. KATO CREWS
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**Reviewed and submitted by Peter McNeilly, Assistant United States Attorney.**